E-FILED
Tuesday, 16 March, 2021  01:58:03 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

JANE DOE, by and through her
next friends JULIE DOE and JOHN
DOE; JULIE DOE, Individually; and
JOHN DOE, Individually;

        Plaintiffs,

                                     Honorable

v                                      Case No.

BLUE RIDGE COMMUNITY UNIT
SCHOOL DISTRICT NO. 18;
DONALD FREEMAN, Individually and as
an Agent of BLUE RIDGE COMMUNITY
UNIT SCHOOL DISTRICT NO. 18;
ALESIA ZANDER, Individually and as
an Agent of BLUE RIDGE COMMUNITY
UNIT SCHOOL DISTRICT NO. 18; and
LORI BECK, Individually and as an Agent
of BLUE RIDGE COMMUNITY
UNIT SCHOOL DISTRICT NO. 18;

        Defendant.
_____

## COMPLAINT AND JURY DEMAND

    1.     Plaintiff Jane Doe was born premature and with Down Syndrome.  Jane was a

sick baby, but she was a tiny fighter, and she grew into a trusting, healthy, and happy child.

During the 2019-2020 academic year, Jane Doe was seven years old and attending first grade in

Defendant Blue Ridge Community Unit School District No. 18 ("School District").  She loved

princess movies, Barbie dolls, and Hot Wheels cars.  Jane Doe liked to be independent and was

proud to ride the school bus to and from school.  Her bus driver was Defendant Donald Freeman,

and pursuant to her Individualized Education Plan ("IEP") she had an assigned bus seat, where

she was to be buckled in a car seat, with a bus aide – Defendant Alesia Zander or Lori Beck – to

directly monitor her.  During this same time, 14-year-old male student "MP"[1] sexually abused Jane Doe multiple times on the school bus.

2.  Defendants chose to ignore MP's sexual harassment of Jane Doe that occurred in plain sight on the school bus, much of which was captured on security footage, including MP repeatedly placing Jane Doe on his lap, at times positioning her so they were face-to-face, and fondling, hugging, touching, and kissing her.  Defendants, despite observing MP's misconduct, did not stop MP or increase its supervision of him.  Instead, Defendants facilitated MP's access to Jane Doe and his continuous and escalating sexual harassment against her.  Jane Doe's bus aides – Defendants Zander and Beck – often moved out of Jane's seat specifically so that MP could sit with Jane, allowing him to engage in the above-described sexual misconduct. Defendant Freeman permitted the same behavior.  On *two* occasions, he and the bus aides allowed MP to exit the school bus with Jane Doe and take her into MP's house, without permission from Jane Doe's parents.  Defendants also knowingly permitted Jane Doe to ride the school bus without a school aide to properly monitor her and/or without being buckled into her car seat, a violation of the express terms of Jane's IEP, which fostered MP's access to, and sexual abuse of, Jane.

3.  On or near March 17, 2020, law enforcement informed Julie and John Doe that MP had been found with Jane Doe's panties in his possession and that MP had sexually assaulted Jane on the school bus.  MP was criminally prosecuted for sexually abusing Jane Doe as well as his own sister.  This shocking information, any parent's worst nightmare, turned Julie and John Doe's world upside down.

---

[1] For purposes of this Complaint, the minor male perpetrator is referred to as "MP," which does not reveal his identity or even true initials, in compliance with Fed. R. Civ. P. 5.2(a).

4.      To this day, the School District, despite knowing of MP's sexual harassment and abuse against Jane Doe on the school bus and MP's criminal prosecution, has failed to conduct its own investigation of MP's sexual harassment against Jane Doe or proactively offer her any academic, counseling, or other counseling or accommodations.

5.      Defendants' clearly unreasonable response to MP's sexual misconduct against Jane Doe – one of if not the *most* vulnerable of all students, rendered even more vulnerable due to Defendants' actions and omissions – is likely due to, but in no way excused by, the School District's lack of training regarding recognizing, investigating, and responding to student-on-student sexual harassment.  This training should have included, at the very least, proper standards of care on school buses where, pursuant to well-established Illinois law, the School District owed children like Jane Doe the very *highest* duty of care.

6.      Jane Doe seeks recovery for the significant damages she has suffered as a result of the School District's violations of her rights under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*. the School District's violations of her rights to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution and federal rights under Title IX, pursuant to 42 U.S.C. § 1982; and Defendants' willful and wanton misconduct for violating the terms of her IEP and failing to supervise MP on the school bus.  Julie and John Doe seek recovery for the significant damages they have suffered as a result of Defendants' intentional infliction of emotional distress.

## JURISDICTION

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this litigation involves matters of federal law, specifically claims made under Title

IX, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and claims for deprivation of federal and Constitutional rights under 42 U.S.C. § 1983.

8.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3) & (4) because this litigation involves claims for deprivation of Jane Doe's civil rights under 42 U.S.C. § 1983.

9.     This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy stemming from the allegations that form the basis of the federal claims in this action.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendants are located within the Judicial District and the events and omissions giving rise to the Complaint occurred in this Judicial District.

## PARTIES

11.     Plaintiff Jane Doe is a minor and resident of Piatt County, Illinois.[2]  She is currently a student in the School District.

12.     Plaintiff Julie Doe is the mother and next friend of Jane Doe.  She is a resident of Piatt County, Illinois.

13.     Plaintiff John Doe is the father and next friend of Jane Doe.  He is a resident of Piatt County, Illinois.

14.     Defendant Blue Ridge Community Unit School District No. 18 is a recipient of federal funds within the meaning of 20 U.S.C. § 1681(a).  The School District geographically lies within DeWitt County, Illinois.

---

[2] Jane Doe and her parents are contemporaneously filing a Motion for Leave to Proceed Under Pseudonym in order to protect Jane's identity and privacy as a minor and a sexual assault victim.

15.     At all relevant times, Defendant Donald Freeman was employed by the School District as a bus driver.  Based on information and belief, Mr. Freeman is a resident of DeWitt County, Illinois.

16.     At all relevant times, Defendant Alesia Zander was employed by the School District as a bus aide for Jane Doe and a substitute bus driver.  Based on information and belief, Ms. Zander is a resident of DeWitt County, Illinois.

17.     At all relevant times, Defendant Lori Beck was employed by the School District as a bus aide for Jane Doe.  Based on information and belief, Ms. Beck is a resident of DeWitt County, Illinois.

## FACTUAL ALLEGATIONS

### *Jane Doe was Sexually Harassed and Abused by MP on the School Bus*

18.     Jane Doe was a first-grade student in the School District during the 2019-2020 academic year.

19.     Jane Doe has Down Syndrome.

20.     Jane Doe had an IEP during the 2019-2020 academic year.

21.     Jane Doe's IEP stated, among other things, "Special transportation is required to and from schools and/or between schools.  **[Jane Doe] sits in a car seat and is buckled in when she rides the bus.  [Jane Doe] also has a bus aide on the bus each time she rides**."

22.     Defendant Freeman drove the school bus that Jane Doe took to and from school.

23.     Defendants Zander and Beck were employed by the School District as bus aides for Jane Doe.  Defendant Zander also served as a substitute bus driver.

5

24.     On occasion, the School District permitted a teenage student to act as a bus aide for Jane Doe, including but not limited to on January 30, 2020, when Defendant Zander served as the substitute bus driver and a student acted as Jane Doe's bus aide.

25.     Student MP was a male teenage student in the School District during the 2019-2020 academic year.

26.     MP rode the same school bus as Jane Doe.

27.     MP sexually preyed on Jane Doe during the 2019-2020 academic year.

28.     At that time, MP was 14 years old, and Jane Doe was seven years old.

29.     As known to the School District, MP was not related to the Doe family.

30.     As known to the School District, MP was not, in any way, an authorized caregiver for Jane Doe.

31.     No later than January 13, 2020, and very likely before this time, Defendants Freeman, Zander, and Beck regularly observed MP engage in sexual harassment against Jane Doe, including but not limited to placing Jane Doe on his lap, positioning her so that she was on his lap and they were face-to-face, and hugging, cuddling, fondling, touching, and kissing her. They also saw MP position Jane Doe so that she was standing in front of him on the bus seat and was shifting her weight from side to side, which – based on information and belief – was when MP removed Jane Doe's pants and/or panties.

32.     Defendants Freeman, Zander, and Beck regularly observed MP focusing on Jane Doe on the school bus, including but not limited to his keenly watching Jane Doe after she had a wetting accident and Defendant Zander and Jane Doe's sister were trying to create privacy while changing Jane's undergarments on the bus.

33.     Defendants Freeman, Zander, and Beck repeatedly granted MP's request to sit by Jane Doe.

34.     On at least one occasion when the School District permitted a student to act as Jane Doe's bus aide and Defendant Zander served as the substitute bus driver, including January 30, 2020, MP sexually abused Jane.

35.     On at least one occasion, including February 18, 2020, elementary school principal Ryan Peyton knew that no aide was present on the school bus to supervise Jane Doe, yet the School District still permitted transport of Jane Doe by school bus.  MP sexually abused Jane Doe on the bus that day.  Defendant Freeman could observe MP's sexual misconduct from his school bus mirror, but he took no steps to stop MP.

36.     On at least two occasions, Defendant Freeman and the bus aide permitted MP to disembark the school bus with Jane Doe and take her into his house, without any permission from Jane Doe's parents.  Both times the School District, knowing of this, directed Defendant Freeman to drive away and leave Jane Doe at MP's house.

37.     On multiple occasions, Defendant bus aide Zander or Beck moved from her seat beside Jane Doe so that MP could sit next to Jane, where he visibly, among other things, positioned Jane on his lap and fondled, touched, hugged, and kissed her.

38.     MP sexually abused Jane Doe when Defendants did not comply with the requirements of Jane's IEP.

39.     Defendants, knowing that MP was engaging in the above-described sexual harassment against Jane Doe, made no effort to protect Jane, follow the requirements of her IEP so that she remained buckled into her car seat or with an aide directly monitoring her, stop MP from sexually harassing and abusing her, or increase its supervision of MP.

40.     Defendants, knowing that MP was engaging in the above-described sexual harassment against Jane Doe, did not inform Jane's parents of the same.

41.     Defendants, knowing that MP was engaging in the above-described sexual harassment against Jane Doe, did not report MP to law enforcement or DCFS.

42.     Defendants knowingly violated Jane Doe's IEP by permitting her to be unbuckled from her assigned car seat on the bus and be seated on MP's lap or stand in front of him, which allowed MP to sexually harass and abuse Jane Doe.

43.     Defendants knowingly violated Jane Doe's IEP by permitting Jane to be transported on a school bus without an aide present or with an aide who was not properly monitoring Jane Doe, which allowed MP to sexually harass and abuse Jane Doe.

44.     Due to Jane Doe's tender age and disability, she was legally incapable of consenting to or welcoming sexual conduct from any person, including MP.

### _MP Was Criminally Investigated and Prosecuted_

45.     Based on information and belief, MP's parents discovered that MP was sexually abusing his younger sister, and they reported this to law enforcement and/or the Department of Children and Family Services ("DCFS").

46.     Based on information and belief, MP's parents also discovered that MP was in possession of girl panties that did not belong to his sister.

47.     Based on information and belief, during law enforcement's investigation, they learned that the panties belonged to Jane Doe and that MP had sexually abused Jane Doe numerous times on the school bus.

48.     On March 17, 2020, law enforcement informed Julie and John Doe that MP had sexually assaulted Jane Doe multiple times on the school bus.

49.     Based on information and belief, at approximately this same time, law enforcement informed the School District Superintendent that MP had sexually abused Jane Doe on the school bus.

50.     However, the School District did not reach out to the Does to inform them it had learned of the report.

51.     The State of Illinois criminally prosecuted MP.

52.     MP was placed under the guardianship of DCFS and, among other things, was sentenced to five years of probation, during which time he must cooperate with sex offender treatment and have no direct or indirect contact with the Does.

### *The School District Still Has Not Investigated or Offered Accommodations to Jane Doe*

53.     To date, the District has not investigated MP's known sexual harassment against Jane Doe.

54.     To date, the District has never mentioned or referenced Jane Doe's Title IX rights in connection with the student-on-student sexual abuse she suffered.

55.     To date, the District has not informed the Does of Jane Doe's Title IX rights in connection with the student-on-student sexual abuse she suffered.

56.     The District did not proactively offer academic, counseling, or other services or accommodations to Jane Doe.

### *The School District Did Not Provide Essential Title IX or Sexual Harassment Training to Administrators, Staff, Aides, Bus Drivers, Students or Families*

57.     Over two decades ago, the U.S. Supreme Court stated, "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998).

58.     In 1999, the U.S. Supreme Court determined that schools may be held liable in private Title IX actions for monetary damages when they are deliberately indifferent to student-on-student sexual harassment, which includes student-on-student sexual assault. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999).

59.     Over a decade ago, the Illinois Appellate Court held that school districts that operate buses to transport students "owe their students the **<u>highest degree of care</u>** to the same extent common carriers owe their passengers the highest degree of care." *Green v. Carlinville Cmty. Unit Sch. Dist. No. 1*, 281 Ill. App. 3d 207, 213 (2008) (emphasis added).

60.     Since 1997, the U.S. Department of Education's Office for Civil Rights ("OCR") has repeatedly reminded schools of their responsibility to address sexual harassment and to train their staff accordingly, in policy guidance documents and public communications.

61.     Upon information and belief, despite clear notice by the U.S. Supreme Court, Illinois appellate court, and OCR regarding the School District's obligations to prevent and remediate the effects of sexual harassment, at all relevant times, the School District failed to provide training or education to administrators, staff, aides, bus drivers, students, and families regarding Title IX and student-on-student sexual harassment.

62.     Upon information and belief, at all relevant times the School District failed to provide training or education to administrators, staff, aides, bus drivers, students, and families on protecting students from sexual harassment, particularly on school buses where they are especially vulnerable; recognizing signs of sexual harassment; understanding what constitutes sexual harassment; proper reporting of student-on-student sexual harassment; investigating reports of sexual harassment; and remediating sexual harassment.

63.     The School District's lack of training is evidenced by, among other things, Defendants' failure to take any meaningful action to protect Jane Doe from MP's sexual harassment on the school bus; Defendants placing Jane Doe in harm's way by not complying with Jane's IEP; Defendants repeatedly permitting MP to sit next to Jane Doe, place her on his lap, and hug, kiss, fondle, and touch her; Defendants allowing MP to exit the school bus and take Jane Doe into his home; the School District's failure to investigate MP's known sexual harassment against Jane Doe; the School District's failure to offer any accommodations or counseling to Ms. Doe after learning that MP had sexually harassed and abused her on the school bus; and Defendants' failure to report MP's sexual harassment to law enforcement or DCFS.

64.     Upon information and belief, at all relevant times, the School District had no Title IX coordinator or other employee designated to handle reports of sexual harassment who was adequately trained in receiving, coordinating, investigating, or responding to reports or observations of student-on-student sexual harassment.

65.     At all relevant times, the School District officially adopted sexual harassment policies that were inadequate with respect to investigating and properly responding to observation of and reported student-on-student sexual harassment, and, in any event, based upon information and belief, the School District failed to provide training or education on those policies to administrators, staff, aides, bus drivers, students, and families.

### *Due to Defendant's Acts and Omissions, Jane Doe Has Suffered Injuries and Loss of Educational Benefits and Opportunities, and Julie and John Doe Have Suffered Significant Emotional and Psychological Harm*

66.     Jane Doe no longer rides the school bus and instead is transported to and from school by her family.  She has suffered increased wetting accidents, nightmares, and increased anger.  It is reasonably expected that Jane Doe will continue to suffer emotional and

psychological injuries as a result of Defendants' acts and omissions, which resulted in MP's

multiple acts of sexual abuse and harassment against her.

67.     Julie and John Doe have also suffered significant injuries as a result of

Defendants' acts and omissions, which resulted in the sexual abuse of their young and vulnerable

daughter.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*
### (*On Behalf of Jane Doe Against the School District*)

68.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as

though fully stated herein.

69.     Jane Doe suffered repeated sexual harassment by MP on the school bus that was

severe, pervasive, and objectively offensive.

70.     The School District has its own transportation department and employed bus

drivers, including Defendant Freeman.

71.     The School District had substantial control over MP and the context in which he

sexually harassed Jane Doe, namely on the school bus.

72.     The School District had actual notice of MP's sexual harassment against Jane Doe

no later than January 13, 2020, when – as captured on school bus security camera footage and

observed by Defendant Freeman – the bus aide moved from her seat next to Jane Doe, permitted

MP to sit next to Jane, and MP positioned Jane so she was on his lap and held and fondled her.

73.     Based on information and belief, the School District had actual notice of MP's

sexual harassment against Jane Doe prior to this time.

74.     Defendant Freeman was an appropriate person within the meaning of Title IX, as he had the authority to address MP's sexual misconduct against Jane Doe and institute corrective measures on behalf of the School District, which owed Jane Doe the highest duty of care – the same as that owed by a common carrier – when she was riding the school bus.

75.     MP continued to sexually harass and abuse Jane Doe through early March 2020, when MP's parents reported him to law enforcement or DCFS.

76.     MP's continued sexual harassment against Jane Doe was observed by Defendant Freeman, as captured on school bus security camera footage.

77.     The School District acted with deliberate indifference to MP's observed sexual harassment against Jane Doe, which caused her to suffer further sexual harassment and abuse by MP.

78.     The School District's response to MP's observed sexual harassment against Jane Doe was clearly unreasonable in light of the known circumstances, particularly given that Jane Doe has Down Syndrome and that all Illinois school districts legally owe their students the *highest* duty of care on school buses.  This is the same duty that common carriers owe their passengers.

79.     Through its acts and omissions, the District acted with deliberate indifference to MP's observed and known sexual harassment against Jane Doe by, among other things:

    a.  Failing to protect Jane Doe from MP on the school bus, where the School District owed Jane the *highest* duty of care by law;

    b.  Failing to take measures to stop or prevent MP from further victimizing Jane Doe;

    c.  Permitting MP to access and sexually harass Jane Doe on the school bus, including by placing her on his lap, sometimes facing him, and hugging, touching, fondling, kissing, and nuzzling her;

d.   Failing to supervise MP on the school bus;

e.   Violating the terms of Jane Doe's IEP;

f.   Failing to have an aide on the school bus, or failing to have an aide who properly monitored Jane Doe on the bus;

g.   Allowing Jane Doe to ride the school bus without being buckled into her assigned car seat;

h.   Failing to appropriately investigate, remedy, and respond to MP's witnessed and reported sexual harassment against Jane Doe;

i.   Failing to offer or provide educational accommodations, such as academic and psychological counseling, to Ms. Doe after observing and learning of MP's sexual harassment against her;

j.   Failing to inform the Doe family of Ms. Doe's rights under Title IX;

k.   Permitting MP to take Jane Doe off of the school bus with him and to his home;

l.   Failing to report MP to law enforcement or DCFS (prior to being informed by law enforcement that it was investigating MP);

m.   Failing to report MP's sexual misconduct to Jane Doe's parents; and

n.   Failing to properly train administrators, staff, aides, bus drivers, students, and families on Title IX and student-on-student sexual harassment.

80.   The unchecked sexual harassment deprived Jane Doe of educational opportunities and benefits.  The School District's failure to properly address and respond to MP's sexual harassment against Jane Doe caused her to suffer further harassment from MP and to stop riding the school bus.  Jane Doe has suffered physical, psychological, and emotional harm due to MP's sexual harassment and abuse and the School District's failure to take appropriate steps to respond to and prevent MP's continued sexual harassment and abuse against her.

81.     As a direct and proximate result of the School District's deliberate indifference, Jane Doe suffered and continues to suffer injuries for which she is entitled to be compensated, including but not limited to:

a.     Past, present, and future physical and psychological pain, suffering and impairment;

b.     Medical bills, counseling, and other costs and expenses for medical and psychological care;

c.     Impaired educational capacity;

d.     Attorneys' fees and costs; and

e.     Such other and further relief as this Court deems just and proper.

**COUNT II**
**Failure to Train, in Violation of Jane Doe's**
**Constitutional and Federal Rights, pursuant to 42 U.S.C. § 1983**
***(On Behalf of Jane Doe Against School District)***

82.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

83.     The School District is subject to 42 U.S.C. § 1983.

84.     Sexual harassment is a form of unlawful sex discrimination that can violate the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.  Jane Doe's Equal Protection rights were violated when she suffered unremedied sexual harassment and discrimination as a student in the School District.

85.     Plaintiff Jane Doe had federal civil rights secured by federal statute, Title IX of the Education Amendments of 1972, which provides in pertinent part, "[N]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

86.     Title IX was intended to benefit students like Jane Doe.

87.     Title IX provides students like Jane Doe clear civil rights, which are not amorphous or vague, to be free from known sexual discrimination at school.

88.     Title IX imposes a binding mandatory obligation on schools like the School District that are recipients of federal funding that prohibits them from discriminating against students on the basis of sex.

89.     The U.S. Supreme Court has stated, "we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools," and held that a plaintiff may bring causes of action under *both* Title IX *and* § 1983 for unlawful sex discrimination. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-58 (2009). Accordingly, a remedy for sex discrimination in schools is not foreclosed under §1983.

90.     At all times relevant hereto, the School District was a policymaker that had a duty to train, and failed to train, administrators, staff, aides, bus drivers, students, and parents concerning sexual discrimination and harassment against students, Title IX and/or student-on-student sexual harassment and identifying, investigating, reporting, and stopping sexual harassment by students like MP against students like Jane Doe, particularly on school buses where the School District owed its student the *highest* duty of care.

91.     The School District failed to train administrators, staff, aides, bus drivers, students and parents despite the plainly obvious need for training on, among other things, student-on-student sexual harassment and identifying, investigating, reporting, and stopping sexual harassment like that engaged in by MP.

92.     Numerous authorities, including the U.S. Supreme Court, Illinois Appellate Court, and OCR, made clear to the School District that school employees will confront student sexual harassment and abuse with regularity, given the high predictability, recurrence, and prevalence

of student-on-student sexual harassment and abuse in schools. It was inevitable that the School

District's administrators and employees would encounter recurrent situations involving sexual

harassment and abuse that implicated students' Constitutional and federal rights, and they did, in

fact, encounter those recurring situations.

93.    The School District failed to adequately train administrators, staff, aides, bus

drivers, students, and parents, and thereby failed to prohibit or discourage readily foreseeable

conduct, despite the clearly established and well-known dangers of sexual harassment faced by

students in U.S. public schools, and thereby was deliberately indifferent to the rights of persons

with whom school employees regularly come into contact.

94.    The School District's failure to train administrators, staff, aides, bus drivers,

students, and parents effectively denied Jane Doe's clearly established Constitutional and federal

rights.

95.    School Defendants failed to train administrators, staff, aides, bus drivers, students,

and parents in deliberate, reckless, and callous indifference to Jane Doe's federally protected

rights.

96.    As a direct and natural consequence of the School District's actions, inactions,

and deliberate indifference to and violation of Jane Doe's clearly established Constitutional and

federal rights, Jane Doe suffered and continue to suffer injuries including, without limitation,

emotional distress, psychological trauma, and mortification.

97.    The School District's customs, policies, and practices for responding to observed

or known student-on-student student sexual harassment, including MP's sexual harassment

against Jane Doe, were so clearly inadequate that they give rise to a reasonable inference that the

School District acquiesced in the sexual harassment.

98.     As a direct and proximate result of the School District's deliberate indifference, Jane Doe suffered and continues to suffer injuries for which she is entitled to be compensated, including but not limited to:

  a.     Past, present, and future physical and psychological pain, suffering and impairment;

  b.     Medical bills, counseling, and other costs and expenses for medical and psychological care;

  c.     Impaired educational capacity;

  d.     Attorneys' fees and costs; and

  e.     Such other and further relief as this Court deems just and proper.

## COUNT III
### Willful and Wanton Misconduct
### (*On Behalf of Jane Doe Against All Defendants*)

99.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

100.    MP was a student in the School District and was subject to Defendants' authority.

101.    Defendants possessed unique knowledge that MP – who was observed sexually harassing Jane Doe – posed a particular threat to student Jane, and thereby had a duty to protect Jane Doe from MP's sexual harassment and abuse.

102.    Defendants had a heightened duty to protect Jane Doe on the school bus. Defendants owed Jane Doe the same high duty of care that a common carrier owes its passengers.

103.    Defendants' duty of care to protect Jane Doe was a nondelegable duty pursuant to Illinois law.

104.    Defendants had unique control over Jane Doe's safety as a passenger on the school bus.

105.     Defendants failed to comply with Jane Doe's IEP plan, which allowed MP to sexually harass and abuse Jane.

106.     Defendants' failure to comply with the express requirements of Jane Doe's IEP plan was ministerial in nature.

107.     Defendants, after learning of MP's sexual harassment against Jane Doe, did nothing to supervise his activities on the school bus or prevent his continued sexual misconduct against Jane Doe.

108.     Defendants breached their duties to Jane Doe by acting with utter indifference to and conscious disregard for the welfare, well-being, and safety of Jane Doe.

109.     Defendants Freeman, Zander, and Beck were agents and employees of Defendant School District and acting within the scope of their employment, and the School District is vicariously liable for their conduct.

110.     As a direct and proximate result of Defendants' breach of their duties to protect Jane Doe, Jane suffered and continues to suffer injuries for which she is entitled to be compensated, including but not limited to:

      a.     Emotional distress experienced and reasonably certain to be experienced in the future;

      b.     Past, present, and future physical and psychological pain, suffering and impairment;

      c.     Medical bills, counseling, and other costs and expenses for medical and psychological care;

      d.     Impaired educational capacity;

      e.     Punitive damages as necessary and sufficient to deter Defendants from engaging in the same or similar behavior in the future; and

      f.     Such other and further relief as this Court deems just and proper.

**COUNT IV**

**Intentional Infliction of Emotional Distress**
***(On Behalf of Julie Doe Against All Defendants)***

111.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

112.     Defendants' aforementioned conduct was extreme and outrageous.

113.     Defendants recklessly or consciously disregarded the probability of causing emotional distress, particularly in their continual violation and failure to follow Jane Doe's IEP, which allowed and facilitated MP's sexual abuse and sexual harassment against her.

114.     As a result, Julie Doe suffered severe or extreme emotional distress.

115.     Defendants' conduct actually and proximately caused the emotional distress.

116.     As an actual and proximate result of Defendants' conduct, Julie Doe suffered and continues to suffer injuries for which she is entitled to be compensated, including but not limited to:

     a.     Emotional distress experienced and reasonably certain to be experienced in the future;

     b.     Past, present, and future physical and psychological pain, suffering and impairment;

     c.     Medical bills, counseling, and other costs and expenses for medical and psychological care;

     d.     Punitive damages as necessary and sufficient to deter Defendants from engaging in the same or similar behavior in the future; and

     e.     Such other and further relief as this Court deems just and proper.

**COUNT V**
**Intentional Infliction of Emotional Distress**
***(On Behalf of John Doe Against All Defendants)***

117.     Plaintiffs incorporate all preceding paragraphs into this Count by reference as though fully stated herein.

20

118.    Defendants' aforementioned conduct was extreme and outrageous.

119.    Defendants recklessly or consciously disregarded the probability of causing emotional distress, particularly in their continual violation and failure to follow Jane Doe's IEP, which allowed and facilitated MP's sexual abuse and sexual harassment against her.

120.    As a result, John Doe suffered severe or extreme emotional distress.

121.    Defendants' conduct actually and proximately caused the emotional distress.

122.    As an actual and proximate result of Defendants' conduct, John Doe suffered and continues to suffer injuries for which he is entitled to be compensated, including but not limited to:

    a.    Emotional distress experienced and reasonably certain to be experienced in the future;

    b.    Past, present, and future physical and psychological pain, suffering and impairment;

    c.    Medical bills, counseling, and other costs and expenses for medical and psychological care;

    d.    Punitive damages as necessary and sufficient to deter Defendants from engaging in the same or similar behavior in the future; and

    e.    Such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

Plaintiffs request that the Court enter judgment in favor of Plaintiffs and against Defendants, awarding Plaintiffs compensatory damages in an amount to be established at trial, punitive damages, reasonable attorneys' fees, costs, legal interest, and such other relief as the Court may deem just and proper under the circumstances.

## **JURY DEMAND**

Plaintiffs demand trial by jury.

Date:  March 16, 2021                    By: s/ Jeff Green
                                             Jeff Green
                                             Law Office of Jeff Green
                                             316 SW Washington St., Unit 1A
                                             Peoria, IL 61602
                                             Tel. (309) 699-0111
                                             Fax (309) 699-4693
                                             jgreen@jeffgreenlaw.com
                                             Lead Counsel

                                             Monica H. Beck
                                             The Fierberg National Law Group, PLLC
                                             161 East Front Street, Suite 200
                                             Traverse City, MI 49684
                                             Tel. (231) 933-0180
                                             Fax (231) 252-8100
                                             mbeck@tfnlgroup.com
                                             *Attorneys for Plaintiffs*